```
                 UNITED STATES DISTRICT COURT
                    DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| EDWARD OMERT,<br><br>        Plaintiff,<br><br>   v.<br><br>FREUNDT & ASSOCIATES INSURANCE SERVICES, INC., et al.,<br><br>        Defendants. | Civ. No. 16-2529 (NLH/KMW)<br><br>**OPINION** |

**APPEARANCES:**

DONNER LAW ASSOCIATES, LLC
By: Jeffrey A. Donner, Esq.
708 Highway 35
Neptune, New Jersey 07753

and

McCUSKER, ANSELMI, ROSEN & CARAVELLI, P.C.
By: Bruce S. Rosen, Esq.
    Bianca M. Olivadoti, Esq.
210 Park Avenue, Suite 301
Florham Park, New Jersey 07932
        Counsel for Plaintiff

CUTI HECKER WANG LLP
By: Alexander Goldenberg, Esq.
305 Broadway, Suite 607
New York, New York 10007
        Counsel for Defendant Vincent Vitiello

DUGAN, BRINKMANN, MAGINNIS & PACE, ESQS.
By: Gerald J. Dugan, Esq.
    Michael J. Lorusso, Esq.
33 South Main Street
Mullica Hill, New Jersey 08062
        Counsel for Defendants Freundt & Associates Insurance
        Services, Inc. and C. Kent Freundt

**HILLMAN**, District Judge:

This is primarily a breach of contract suit arising out of an alleged failed business association between Plaintiff Edward Omert and Defendant Freundt & Associates Insurance Services, Inc., trading as The Producers Group (hereinafter "TPG").[1] As discussed further herein, the other two Defendants, C. Kent Freundt and Vincent Vitiello, are employees of TPG. Omert asserts that Freundt and Vitiello intentionally interfered with Omert's alleged contract with TPG.

Vitiello moves to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), the single claim asserted against him personally.[2] For the reasons set forth herein, the Motion will be denied.

**I.**

As alleged in the Complaint, Defendant TPG provides "distribution and other marketing functions" for insurance companies. At all relevant times, Defendant Fruendt allegedly was TPG's "founder," "principal shareholder as well as the President, Chief Executive Officer and Manager of TPG on a daily basis." (Compl. ¶ 3) Defendant Vitiello allegedly was the "Executive Vice-

---

[1] The Court has diversity of citizenship subject matter jurisdiction pursuant to 28 U.S.C. § 1332. The parties are completely diverse and the amount in controversy exceeds the statutory minimum.

[2] Defendants TPG and Kent Freundt answered the complaint on June 30, 2016. Magistrate Judge Williams presided over the Rule 16 initial conference in this case on August 11, 2016. The current pretrial factual discovery deadline is March 31, 2017.

2

President of the East Coast Division of TPG and then a principal therein referred to as a Partner." (Id. ¶ 4)

According to the Complaint, Vitiello contacted Omert in August 2012 to see "whether [Omert] would be interested in growing the Annuity Division of TPG." (Compl. ¶ 21)  Omert allegedly had been very successful in his previous employment in the same industry, and TPG allegedly sought out Omert for his expertise. (Compl. ¶¶ 12, 20-21)

Many communications and meetings allegedly took place between Omert, Freundt, Vitiello, and others employed by TPG, over the next six months (Compl. ¶ 21-48), which allegedly culminated in a "Term Sheet."  The Term Sheet provided, among other things, that Omert would be "both an employee of TPG and a co-owner" of TPG's new Annuities and Linked Benefits Products Division. (Compl. ¶ 50, Goldenberg Decl. Ex. 1, "Term Sheet")  The Complaint alleges that Omert and Freundt both signed the document. (Compl. ¶ 61-62; see also Goldenberg Decl. Ex. 1 reflecting signatures of "Ed Omert" and someone signing on behalf of "The Producers Group.")

Allegedly, the roll-out of the proposed new Division never happened, and in a December 16, 2014 email, Vitiello allegedly "advised Omert that TPG 'will probably outsource [its] annuity program,' [and] further commented that 'it was difficult to pull the trigger in the way we planned.'" (Compl. ¶ 103)  The December 16th email is the last alleged communication Omert received from Defendants.

The Complaint alleges four counts. Counts 1 through 3, asserted against TPG only, are breach of contract, breach of the duty of good faith and fair dealing, and unjust enrichment. At issue in this motion is the last count, Count 4-- intentional interference with prospective economic advantage, asserted against Freundt and Vitiello individually.

## II.

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005). It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Under the liberal federal pleading rules, it is not necessary to plead evidence, and it is not necessary to plead all the facts that serve as a basis for the claim. *Bogosian v. Gulf Oil Corp.*, 562 F.2d 434, 446 (3d Cir. 1977). However, "the Federal Rules of Civil Procedure . . . do require that the pleadings give defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 149-50 n.3 (1984) (quotation and citation omitted).

A district court, in weighing a motion to dismiss, asks "'not

whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'" *Bell Atlantic v. Twombly*, 550 U.S. 544, 563 n.8 (2007) (quoting *Scheuer v. Rhoades*, 416 U.S. 232, 236 (1974)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009)("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)("*Iqbal* . . . provides the final nail in the coffin for the 'no set of facts' standard that applied to federal complaints before *Twombly*.").

### III.

The instant motion to dismiss presents one discreet issue: does the Complaint adequately plead facts supporting a plausible conclusion that Vitiello acted outside the scope of his employment such that, if proven, Vitiello can be held liable for intentionally interfering with his own employer's alleged contract with Omert (i.e., the Omert-TPG Term Sheet)?  Vitiello argues no; Omert argues yes.

The parties agree on the applicable legal standard.  When the alleged interference is done by an employee "acting 'on behalf of' [the contracting employer]" there can be no liability. *Varrallo v. Hammond Inc.*, 94 F.3d 842, 849 n.11 (3d Cir. 1996)(applying New Jersey law).  However, an employee can be liable for intentionally interfering with his employer's contract with a third party if that employee "acts for personal motives, out of malice, beyond his

5

authority, or otherwise not in good faith in the corporate interest." *Id.* (internal citations and quotation omitted).[3]

In support of his Motion to Dismiss, Vitiello emphasizes that the Complaint alleges many actions that Vitiello took on behalf of TPG, "or at the very least, in significant part for the benefit of the company." (Reply Brief, p. 7)  Vitiello argues that the Complaint does not plead facts plausibly supporting a conclusion that Vitiello "transformed from being a representative of TPG to being a rogue free agent acting solely for his own personal gain." (Id. p. 7)

In opposition, Omert articulates his theory of his case against Vitiello: "Vitiello took [Omert's] ideas and told Freundt in a secret presentation that they could dispense with Omert's contract and individually profit greater in the absence of Omert's percentage share and ownership interest, even though TPG would earn less

---

[3] *See also Cataldo v. Moses*, 2006 N.J. Super. Unpub. LEXIS 2950 at *29 (App. Div. 2006)("where an employee is acting outside the scope of his employment, he may be liable in tort for his own conduct.  An employee will be found to fall outside the scope of employment where he acts 'for personal motives, out of malice, beyond his authority, or otherwise not in good faith in the corporate interest.'")(quoting *Varrallo*); *DiMaria Constr., Inc. v. Interarch*, 351 N.J. Super. 558, 568 (App. Div. 2001)("clear-cut consensus has emerged that . . . if the employee or agent is acting outside the scope of his or her employment agency, then an action for tortious interference will lie.")(citing *Varrallo*); *A&M Wholesale Hardware Co., Inc. v. Circo Instrumentation Technologies, Inc.*, 2014 U.S. Dist. LEXIS 23032 at *27-28 (D.N.J. Feb. 24, 2014)("Significantly, the Third Circuit has advised that an agent or 'employee who acts for personal motives, out of malice, beyond his authority, or otherwise not in good faith in the corporate interest' is acting outside the scope of his or her agency or employment.")(quoting *Varrallo*).

without Omert's leadership and marketing skills." (Opposition Brief, p. 12)  In support of this theory, Omert cites the following allegations in the Complaint:

1. From August 2012 to June 2013 Plaintiff, working very closely with Vitiello, proposed and thoroughly discussed his innovative plans to roll out TPG's Annuities Division, see generally Compl. at ¶¶ 21-76;

2. In or around May 2013, Plaintiff entered into the Term Sheet Agreement with TPG through which he would receive no salary but a revenue split of any profits that the Annuities Division made, see id. at ¶¶ 50, 61;

3. At the beginning of June 2013, Vitiello admitted to Plaintiff that he did not come to TPG to earn $200,000 per year and that his priority was to become a full partner, see id. at ¶ 78;

4. In or around June 2013, Vitiello – inarguably knowing the terms and conditions of the Term Sheet Agreement – made a presentation to Freundt which included products that, per the Term Sheet Agreement, were contractually obligated to be in Plaintiff's domain, see id. at ¶ 77;

5. Vitiello, despite numerous requests, suspiciously withheld this presentation from Plaintiff, see id. at ¶¶ 82-84;

6. In or around July 2013, Vitiello, acting well beyond his authority, told Plaintiff that TPG would not act on the Term Sheet Agreement until Vitiello had been fully integrated as a partner, see id. at ¶ 94;

7. In or around September 2013, notably before Plaintiff launched the expanded Annuities Division, the e-mail announcement publicizing Vitiello's promotion stated that TPG offered "creative insight that c[ould] help [agents] find solutions for [their] clients in Life Insurance, *Annuities*, Long Term Care, and Disability Insurance," see id. at ¶ 96 (emphasis added);

8. In or around December 2013, Vitiello informed Plaintiff that TPG was going to be outsourcing its Annuities Division; see id. at ¶ 103.

(Opposition Brief, p. 11-12)

7

The Court concludes that these allegations are sufficient to withstand the instant motion. As the Supreme Court has instructed, the district court must decide "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." *Twombly*, 550 at 563 n.8. Omert has pled sufficient facts to allow further factual inquiry into Vitiello's motives and alleged "malice." *Varrallo*, 94 F.3d at 849 n.11.

Accordingly, Vitiello's Motion to Dismiss Count IV of the Complaint will be denied.

**IV.**

For the foregoing reasons, Defendant Vitiello's Motion to Dismiss will be denied.

An appropriate order accompanies this opinion.


Dated: January 31, 2016          ___s/ Noel L. Hillman____
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.