```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

|  |  |
|---|---|
| EDWARD OMERT, | |
| Plaintiff, | |
| v. | Civil No. 16-2529 (NLH/AMD) |
| FREUNDT & ASSOCIATES INSURANCE SERVICES, INC. trading as THE PRODUCERS GROUP, C. KENT FREUNDT, and VINCENT VITIELLO, | OPINION |
| Defendants. | |

**APPEARANCES:**

BRUCE S. ROSEN
BIANCE M. OLIVADOTI
MCCUSKER, ANSELMI, ROSEN & CARVELLI, PC
210 PARK AVENUE, SUITE 301
PO BOX 240
FLORHAM PARK, NJ 07932

AND

JEFFERY A. DONNER
STRYKER, TAMS & DILL LLP
TWO PENN PLAZA EAST
12TH FLOOR
NEWARK, NJ 07105

   *Attorneys for Plaintiff Edward Omert.*

GERALD J. DUGAN
MICHAEL J. LORUSSO
DUGAN, BRINKMANN, MAGINNIS & PACE, ESQS.
1880 JOHN F. KENNEDY BOULEVARD
STE. 1400
PHILADELPHIA, PA 19103

   *Attorneys for Defendants Freundt & Associates Insurance Services, Inc. and C. Kent Freundt.*

ALEXANDER G.P. GOLDENBERG
CUTI HECKER WANG LLP
305 BROADWAY
SUITE 607
NEW YORK, NY 10007

*Attorney for Defendant Vincent Vitiello.*

**HILLMAN, District Judge**

This case is a breach of contract and intentional interference with prospective economic advantage action brought under New Jersey common law. Presently before the Court is Plaintiff Edward Omert's Motion for Partial Reconsideration ("Motion for Reconsideration"). For the reasons discussed herein, the Court will deny Plaintiff's Motion for Reconsideration.

## BACKGROUND

The Court relies upon the facts discussed in its December 20, 2018 Opinion, which is the subject of Plaintiff's Motion for Reconsideration and incorporates those facts by reference. On December 20, 2018, the Court issued its decision on three competing motions for summary judgment, one filed by Plaintiff, another by Defendants C. Kent Freundt and Freundt & Associates Insurance Services, Inc. t/a The Producers Group ("TPG"), and a third by Defendant Vincent Vitiello. The Court denied Plaintiff's Motion for Summary Judgment and granted Defendants' Motions for Summary Judgment. As a result, it dismissed the

intentional interference with prospective economic advantage claims against the two individual defendants, Freundt and Vitiello.

On January 7, 2019, Plaintiff filed his Motion for Reconsideration. On January 16, 2019, Defendant Vitiello filed opposition in the form of a letter brief. On January 22, 2019, Defendant Freundt filed its brief in opposition. Accordingly, Plaintiff's Motion for Reconsideration is fully briefed and ripe for adjudication. The Court will note any other relevant facts where necessary in its Opinion.

## ANALYSIS

### A. Subject Matter Jurisdiction

This Court possesses subject matter jurisdiction over the present action pursuant to 28 U.S.C. § 1332. There is complete diversity between the parties and the amount in controversy exceeds $75,000.

### B. Motion for Reconsideration Standard

Local Rule 7.1(i) allows a party to file a motion with the Court requesting the Court to reconsider the "matter or controlling decisions which the party believes the Judge or Magistrate Judge has overlooked." Under Local Rule 7.1(i), the moving party must demonstrate "'the need to correct a clear error of law or fact or to prevent manifest injustice.'" Andreyko v. Sunrise Sr. Living, Inc., 993 F. Supp. 2d 475, 478

3

(D.N.J. 2014) (citations omitted). In doing so, the moving party must show the "'dispositive factual matter or controlling decisions of law'" it believes the court overlooked in its initial decision. Mitchell, 913 F. Supp. 2d at 78 (citation omitted). A mere disagreement with the Court will not suffice to show that the Court overlooked relevant facts or controlling law. United States v. Compaction Sys. Corp., 88 F. Supp. 2d 339, 345 (D.N.J. 1999).

C. **Plaintiff's Motion for Reconsideration**

Plaintiff's Motion for Reconsideration is built upon two general arguments. First, Plaintiff argues the Court committed a clear error of law in determining that Freundt, as the majority shareholder of TPG and sole decisionmaker, could not be liable as a matter of law for tortious interference with TPG's contract with a third-party. Second, Plaintiff argues the Court failed to consider or overlooked key facts as to whether Vitiello influenced Freundt's decision concerning termination of the alleged agreement with Plaintiff.

Defendant Freundt opposes Plaintiff's Motion for Reconsideration. Freundt dedicates the majority of his opposition to discussion of the legal origins of the tort of intentional interference and why its origins supports the Court's decision in this instance. Freundt also argues Plaintiff's Motion for Reconsideration on factual issues merely

4

rehashes his Motion for Summary Judgment already considered by the Court. Defendant Vitiello also opposes Plaintiff's Motion for Reconsideration in a brief letter. Vitiello's argument is simple: the Court should deny Plaintiff's Motion for Reconsideration as it relates to him because the motion merely rehashes arguments made in the summary judgment briefing.

Accordingly, the Court will first consider Plaintiff's legal argument on the tort of intentional interference and then will consider the separate factual issues Plaintiff presents.

> i. <u>Intentional Interference Claim against Defendant Freundt</u>

Plaintiff presents a number of arguments addressing whether this Court committed clear error in dismissing Freundt from this action. First, Plaintiff argues this case is distinguishable from the case law relied upon in this Court's Opinion. Second, Plaintiff brings forward case law on the scope of an agency relationship, which it argues controls in this case. Third, Plaintiff argues that a line of case law which permits personal liability for corporate officers and directors for torts committed by a corporation is applicable here. Fourth, Plaintiff resorts to a policy argument: because minority shareholders may be harmed, a non-shareholder should be able to hold a majority shareholder and sole decisionmaker liable for an intentional interference claim. Defendant Freundt resists these

arguments by focusing on the basis of the tort of intentional interference and arguing about the scope of his authority to bind TPG or direct its actions. The Court will address each of Plaintiff's arguments in turn.

Before discussing the law, the Court notes certain undisputed facts. Both Plaintiff and Defendant Freundt acknowledge that Freundt was the majority shareholder, President, and Chief Executive Officer of Defendant TPG. Plaintiff understood at the time, and does not dispute now, that it was Freundt who possessed the <u>sole</u> decision making authority as to Plaintiff's employment and the creation of the Annuities Division.

Plaintiff argues that this matter is distinguishable from the case relied upon by the Court in upholding dismissal of Plaintiff's intentional interference claim against Freundt. The case, <u>Sammon v. Watchung Hills Bank for Sav.</u>, found that the president and sole stockholder of a construction company could not be held liable for intentional interference with a contract made with his construction company. 611 A.2d 674 (Super. Ct. Law Div. 1992). Plaintiff argues the facts of <u>Sammon</u> are distinguishable from this case because Defendant Freundt is not the sole stockholder of TPG.

This factual argument misses the central premise of the <u>Sammon</u> court's holding. There, the Court held: "Only Charles

Messano could exercise the privilege of the principal referred to in the second principle of agency law mentioned above." Id. at 676. Here, while others *could* have acted on behalf of TPG, the undisputed facts – admitted by Plaintiff – show that *only* Defendant Freundt could exercise this privilege with respect to this alleged contract between Plaintiff and TPG. Whether there are other employees, officers, or shareholders is of no moment, as there was only one majority shareholder, Defendant Freundt, and only one individual at TPG that could bind Omert to TPG, Defendant Freundt. Because both those roles were filled by Defendant Freundt, he and TPG are indistinguishable in this respect and the result in Sammon necessarily follows.

Plaintiff also argues the Court's ruling in this case runs afoul of a New Jersey Appellate Division case and a Third Circuit case. This is not correct. The Appellate Division case, DiMaria Construction, Inc. v. Interarch, is not factually analogous. 799 A.2d 555 (N.J. Super. Ct. App. Div. 2001). There, a construction contract was executed between the plaintiff, a construction company, and Commerce Bank, to do certain construction work on an office building. Id. at 558. Commerce also hired a firm to complete some interior projects, which in turn hired an architect. Id. These individuals and entities constituted the defendants to this action. Id. At some point during the pendency of the project, the defendants

7

convinced Commerce to terminate its contract with the plaintiff. Id. at 559.

After completion of a jury trial, the defendants appealed certain issues, including whether an intentional interference claim was properly asserted against them. Id. at 560. The parties agreed that "defendants were agents of Commerce." Id. at 561. Thus, the question presented to the Appellate Division was "whether defendants, as agents of Commerce, can be held liable for tortious interference." Id. The Appellate Division found that agents can indeed be held liable for intentional interference. Id. The proper test, the Appellate Division determined, was whether the individual or entity acted outside the scope of its agency, acted maliciously, or for personal motives. Id. This case, however, does not concern any analysis on the question of whether a majority owner of an entity is subject to this test.

The Third Circuit case, Varallo v. Hammond Inc., is similarly inapposite. 94 F.3d 842 (3d Cir. 1996). There, the claim was that a supervisor of a corporation intentionally interfered with the corporation's employment contract with an employee. Id. at 848. The same test cited in DiMaria Construction, Inc. is cited here. Id. at 849, n.11. Again, this case does not present any analysis of the question

currently presented to the Court.[1]

The requirement under both of these decisions is that the individual or entity is either an employee or agent. In DiMaria Construction, Inc., the defendants asserted they were agents of Commerce Bank.[2] In Varallo, the defendant was an employee of the corporation which was contractually obligated to the plaintiff-employee. Here, the Court determined by virtue of Freundt's majority control of TPG and his stats as the sole decisionmaker that he was the principal for purposes of the tort here. The case law cited by Plaintiff does not question this determination.

Plaintiff also cites Hammer v. Hair Systems Inc., an unpublished Appellate Division case. No. A-1475-14T1, 2017 N.J. Super. Unpub. LEXIS 1411 (N.J. Super. Ct. App. Div. June 9, 2017). There, a number of family members – together – "controlled the majority of the shares of" the defendant corporation. Id. at *2-3. There, the tortious interference claim was rooted in a CEO's employment contract. Id. at *3-4.

---

[1] The Court notes Plaintiff also cites a District of New Jersey case, but this merely states the same rule as discussed in the other cases noted supra. Silvestre v. Bell Atl. Corp., 973 F. Supp. 475, 486 (D.N.J. 1997), aff'd, 156 F.3d 1225 (3d Cir. 1998). This does not alter the Court's analysis here.

[2] The Court notes one of the defendants was the "wife of Vernon Hill, the founder and chairperson of Commerce." DiMaria Const., Inc., 799 A.2d at 558.

9

Instead of dismissing the claims against the individuals out-of-hand, the Court dismissed the claims because it did not find malice. Id. at *18-20. This case is inapposite because the individuals were "majority owners" and the Court was not considering the action of the majority owner. Id. at *19. In other words, there was not one individual – as there was here – who was the majority owner and sole decisionmaker. Thus, it is incorrect to state that the law holds "majority shareholders . . . are not exempt from tortious interference liability simply because they can exercise the corporate privilege to breach the contract." (Pl.'s Mot. for Recons. 11.)

Additionally, Plaintiff cites a line of New Jersey case law concerning whether personal liability attaches to a corporate officer for torts committed by a corporation. Trustees of Steel & Iron Workers Fund v. Huber, 347 A.2d 10, 12 (N.J. Super. Ct. App. Div. 1975). In this case, and those cited by it, the Appellate Division states:

> [i]t is well established that while a director or officer of a corporation does not incur personal liability for its torts merely by reason of his official character, if he directs the tortious act to be done, or participates or cooperates therein, he is personally liable to third persons injured or damaged thereby, even though liability may also attach to the corporation.

Id. (citing McGlynn v. Schultz, 231 A.2d 386, 388 (N.J. Super. Ct. App. Div. 1967), cert. denied, 235 A.2d 901 (N.J. 1967); Sensale v. Applikon Dyeing & Printing Corp., 79 A.2d 316, 317-18

(N.J. Super. Ct. App. Div. 1951)).

Plaintiff, however, appears to have missed the fundamental point of this rule. It is only when the <u>corporation</u> commits a tort that the director of officer may also be held personally liable. If the corporation does not commit a tort, whether the director or officer commits a bad act is of no moment. Here, there is no ambiguity: TPG has not committed a tort, but rather a breach of contract and TPG is legally unable to commit intentional interference. Therefore, this rule does not bear on the question before this Court.

The Court also addresses Plaintiff's policy argument that "this Court is essentially granting free license to every majority shareholder to engage in tortious conduct without consequence," which would leave the remaining shareholders to "suffer loss through the corporation." (Pl.'s Mot. for Recons. 1-2.) Assuming the veracity of this statement for purposes of argument, it fails to hold water. A non-shareholder should not be able to pursue an interference claim against the majority shareholder just because minority shareholders may be harmed. Plaintiff fails to cite any principle that would suggest a person or entity may assert a tort claim because some other, unrelated person or entity may suffer harm. Instead, if minority shareholders suffer loss, they may resort to a number of corporate and legal remedies in order to remedy the harm or

recover those losses.  The Court need not delineate the available avenues of relief here.

Finally, the Court notes what appear to be the limits of this holding.  The Court does not intend to say that merely by status as a majority shareholder an individual may legally and absolutely absolve himself or herself of tortious interference claims.  Instead, the facts admitted by the parties show that only the majority shareholder here had the authority to make the decision concerning TPG's relationship with Omert.  This makes him indistinguishable, as a matter of legal principle, from the individual in Sammon.  If that were not the case, the Court's decision would be required to rest on a different basis.  Accordingly, the Court will deny Plaintiff's Motion for Reconsideration on this point as there is no clear error of law.

> ii. Intentional Interference Claim against Defendant Vitiello

Plaintiff presents sixteen factual assertions which he claims require this Court to find he has asserted a viable intentional interference claim against Defendant Vitiello. These factual assertions were previously presented to the Court on Plaintiff's Motion for Summary Judgment and in opposition to Defendants' Motions for Summary Judgment.  Both Defendants Freundt and Vitiello argue Plaintiff's basis here is improper. They argue Plaintiff's argument shows mere disagreement with the

Court, and not that the Court overlooked anything.

As this Court has stated previously:

> "A party seeking reconsideration must show more than a disagreement with the Court's decision, and recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden." Facteon, Inc. v. Comp Care Partners, LLC, No. 13-6765, 2015 U.S. Dist. LEXIS 15159, 2015 WL 519414, at *1 (D.N.J. Feb. 9, 2015) (quoting G-69 v. Degnan, 748 F. Supp. 274, 275 (D.N.J. 1990)). "A motion for reconsideration should not provide the parties with an opportunity for a second bite at the apple." Tischio v. Bontex, Inc., 16 F. Supp. 2d 511, 533 (D.N.J. 1998) (citation omitted).

Fields v. Dickerson, No. 14-778 (NLH/KMW), 2017 U.S. Dist. LEXIS 47278, at *3 (D.N.J. Mar. 30, 2017) (emphasis added).

Defendants are correct, this is merely an attempt at a "second bite at the apple." These facts were presented to and considered by the Court. Even considering Plaintiff's argument on the merits, it is clear that the Court's decision in this matter does not turn in any part upon these facts.

The Court stated the following in its previous Opinion:

> First, this Court will address whether there remains an absence of sufficient facts or disputed facts as to the element of causation for Defendant Vitiello. "A plaintiff shows causation when there is 'proof that if there had been no interference there was a reasonable probability that the victim of the interference would have received the anticipated economic benefits.'" Printing Mart-Morristown, 563 A.2d at 41 (quoting Leslie Blau Co. v. Alfieri, 384 A.2d 859, 865 (N.J. Super. Ct. App. Div. 1978)). Defendant Vitiello argues Plaintiff has not shown the required causation element because it was Defendant Freundt, not he, who was solely responsible for the decision at issue. Plaintiff counters that Defendant Freundt's reason for denying

13

Omert the Annuities Division was suspect and that Individual Defendants "acted in tandem to achieve . . . their own selfish purposes . . . to the detriment of TPG." (Pl.'s Opp. Br. 25-26.)

This Court finds, in light of the undisputed factual basis presented by Defendant Vitiello, Plaintiff has not pointed to any disputed facts that would allow him survive Defendant Vitiello's Motion for Summary Judgment. Defendant Vitiello asserts that (1) "[o]nly Mr. Freundt had the authority to commit TPG to new ventures" and (2) "Mr Freundt ran TPG and would need to approve of Plaintiff joining the company." (Freundt & Vitiello's SOMF ¶¶ 19, 39.) Plaintiff does not dispute these facts. (Pl.'s SOMF ¶¶ 19, 39.) These facts show, but for Defendant Vitiello's actions, Defendant Freundt would have still refused to employ Plaintiff at TPG. Plaintiff has not brought forth facts showing – even if this Court assumes for the sake of argument the truth of his assertions - a reasonable probability that the outcome would have changed but for Vitiello's alleged interference.

If Defendant Vitiello was never part of the factual scenario here – and otherwise assuming the Plaintiff's assertions – the outcome would be the same. Plaintiff theorizes that both Individual Defendants had personal reasons – separate and distinct – for deciding against working with him. Specifically, Plaintiff theorizes or admits that (1) Defendant Freundt had his own reason for not allowing TPG and Omert to work together and (2) Defendant Freundt had sole decision-making authority over whether the deal would go forward. Based on that, without Vitiello, Freundt would have still refused to do business with Omert. But for Defendant Vitiello, the outcome would be exactly the same.[3]

Plaintiff's arguments in his opposition brief are inapposite. Whether Defendant Freundt sincerely held the belief that TPG should not bring in new ventures does not change the decision here. If he truly believed it, he would not have allowed TPG and Omert to start an Annuities Division. If he did not truly believe it and

---

[3] Plaintiff does not appear to contest that the issue raised by Defendant Vitiello concerning the percentage of commissions had any effect whatsoever on the decision here.

14

> instead wished to pursue solely personal gain through
> the sale of a company unencumbered by another co-owner,
> again, the outcome would be the same. Vitiello's actions
> are irrelevant to that consideration. Moreover, the
> theory that Vitiello and Freundt acted in tandem to deny
> Omert this business opportunity does not satisfy the
> causation requirement here. No party has brought
> forward any case law that would support this theory of
> causation, and this Court has been unable to find case
> law on-point. More fundamentally, Plaintiff does not
> base this assertion in facts on the record. Accordingly,
> this Court will grant Defendant Vitiello's Motion for
> Summary Judgment.[4]

(Dec. 20, 2018 Opn. 18-21.)

The facts presented to the Court for a second time on Plaintiff's Motion for Reconsideration do not alter the Court's previous decision. Plaintiff asserted, based on the same facts, that both Defendants Freundt and Vitiello had distinct reasons for not wishing to torpedo the alleged deal between TPG and Plaintiff. As stated multiple times, it was only Defendant Freundt who had the power to bind TPG. Thus, it appears Defendant Vitiello's machinations, whatever they may have been, had no effect on Defendant Freundt's decision. In fact, Plaintiff said this in its opposition to Vitiello's Motion for Summary Judgment: "The fact is that both Vitiello and Freundt desired the destruction of the Agreement and the elimination of Omert and acted in tandem to achieve it for their own selfish

---

[4] Because the Court finds the causation element has not been met here, the other arguments made by Plaintiff and Defendant Vitiello on Vitiello's liability for this claim are rendered moot and will not be considered by the Court.

purposes and to the detriment of TPG." (Pl.'s Opp'n Br. 26.) The Court, whether it finds Plaintiff's Motion for Reconsideration on this point deficient for either of the above two reasons, will deny it in this respect as there is no clear error of fact or law and no manifest injustice.

## **CONCLUSION**

Based on the foregoing reasons, this Court will deny Plaintiff's Motion for Reconsideration.

An appropriate Order will be entered.


Date:  July 3, 2019           s/ Noel L. Hillman
At Camden, New Jersey      NOEL L. HILLMAN, U.S.D.J.